UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CVETKO DIMOVSKI, | : | 3:10-CV-205 (JCH) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TOLISANO & DANFORTH, L.L.C., | : | APRIL 28, 2011 |
|     Defendant. | : | |

**RULING RE: CROSS MOTIONS FOR (PARTIAL) SUMMARY JUDGMENT
DOC. NOS. 18 & 31**

## I.    INTRODUCTION

Plaintiff, Cvetko Dimovski ("Dimovski"), brings this action against defendant, Tolisano & Danforth, L.L.C. ("Tolisano & Danforth"), alleging that Tolisano & Danforth violated certain provisions of the Fair Debt Collect Practices Act ("FDCPA"), 15 U.S.C.S. §§ 1692 et seq., when it misrepresented the amount owed by Dimovski by an extra $35 above the total amount of the judgment and costs actually awarded.

Both parties filed Motions for Summary Judgment. For the following reasons, the court denies both parties' Motions.

## II.    FACTUAL BACKGROUND[1]

This FDCPA lawsuit arises out of Tolisano & Danforth's representation of Portfolio Recovery Associates, LLC in an action against Dimovski entitled <u>Portfolio Recovery Associates, LLC v. Cvetko Dimovski</u>, SCC-69628 ("the underlying action").

Dimovski, a consumer within the meaning of the FDCPA, opened and used a

---

[1] For the purposes of this section, undisputed facts will be cited to the parties' Local Rule 56(a)(1) Statements. All other facts supported by the record will be cited to the record.

1

Providian credit card for personal use. Pl.'s L.R. 56(a)(1) Stmt. ¶ 1. Tolisano & Danforth is a law firm in the practice of consumer debt collection, id. at ¶ 2, and represented Portfolio Recovery Associates, LLC in an action against Dimovski to collect debt that Dimovski owed, Def.'s L.R. 56(a)(1) Stmt. ¶ 1. Attorney Brian D. Danforth is the sole owner of Tolisano & Danforth, and he is the firm's Fair Debt Collection Practices Act compliance officer. Id. at ¶ 2.

On April 17, 2008, in the underlying action, the small claims court entered a default judgment against Dimovski totaling $2,973.90. Id. at ¶ 6. Of that total, $2,938.90 was for damages, and $35 was for costs. Pl.'s L.R. 56(a)(1) Stmt. ¶ 3.[2]

On or about February 3, 2009, upon reviewing his firm's files, Danforth determined that there was an outstanding judgment against Dimovski on which no payments had been made. Def.'s L.R. 56(a)(1) Stmt. ¶ 8. As such, Danforth began the process of having a financial institution execution form ("execution form") filed with the court. Id.

Tolisano & Danforth did not receive a formal notice of the April 17, 2008 judgment against Dimovski, and so Danforth printed the case summary from the State of Connecticut Judicial Branch website. Id. at ¶ 9; (Exhibit C). Using the printed case summary as a reference, Danforth's secretary prepared the execution form. Id. at ¶ 10.

The execution form contains 8 numbered Boxes, each of which contains their own individual heading describing what information is required for each Box. (Exhibit

---

[2]In his Local Rule 56(a)(1) Statement, Dimovski consistently states that the damages were $2,928.90, and not the correct amount of $2,938.90. Because neither party disputes what the actual damages were, the court will cite to Dimovski's Local 56(a)(1) Statement as if he stated the correct amount of $2,938.90 in damages.

D).  Boxes 1-3 are the relevant ones here.  Box 1 is entitled "Amount of Judgment," which refers to the base amount owed by the debtor, not counting any costs tacked on. Id.  Box 2 is entitled "Amount of Costs," which refers exclusively to any costs imposed by the small claims court.  Id.  Box 3 is entitled "Amount of Judgment, Costs and Fees." Id.  Under Box 3's heading is a parenthetical that gives directions to "Add 1 and 2," referring to the numbers in Boxes 1 and 2, when filling out the amount in Box 3.  Id.

When filling out the execution form, the secretary inputted $2,973.90 into Box 1, when she should have input $2,938.90.  Pl.'s L.R. 56(a)(1) Stmt. ¶ 9.  Thus, the secretary incorrectly added $35 in costs to the amount stated in Box 1.  Id.  The secretary then inserted the correct amount of costs, $35, into Box 2.  Id.  Finally, when filling out Box 3, the secretary inserted the correct amount of $2,973.90, which was the total amount of the judgment.  Id.  However, in doing so, the secretary did not add the numbers of Boxes 1 and 2 when arriving at her total of $2,973.90.  Id.  If the amounts in Boxes 1 and 2 were added together, then the amount in Box 3 would have incorrectly been $3,008.90.

On February 3, 2009, Danforth reviewed portions of Dimovski's file, and compared the information in the file with that in the completed execution form.  Def.'s L.R. 56(a)(1) Stmt. ¶ 11.  Danforth then signed and filed the execution form, because he did not notice anything improper in its content.  Id.

On February 24, 2009, the small claims court returned the execution form, with instructions to increase the amount in Box 3 by $35, because it appeared that Danforth's secretary did not properly add the totals of Boxes 1 and 2.  Id. at ¶ 12.  Upon receipt of the court order, Danforth's secretary prepared a new execution form based

3

on the court's instructions.  Id. at ¶ 13.  In doing so, the secretary kept the numbers in Boxes 1 and 2 the same as the first execution form, and then added them together so that the number in Box 3 was $3,008.90.  Id.  Danforth then compared the court order with the newly completed execution form, determined that the execution form complied with the court order, and had it filed.  Id. at ¶ 14.  Thus, the end result was that the final execution form filed with the small claims court included a $35 overage.  Pl.'s L.R. 56(a)(1) Stmt. ¶ 13.

Both parties agree that, by misrepresenting the amount owed by an extra $35 above the total amount of the judgment and costs actually awarded, Tolisano & Danforth violated the FDCPA.  However, in order to escape liability, Tolisano & Danforth asserts that the misstatement was the result of a bona fide error, which is an affirmative defense under the FDCPA.

### III.    STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law."  In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Fed R. Civ. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to

summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

When considering cross-motions for summary judgment, the court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 142 (2d Cir. 2004) (citations omitted). Thus, "even when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party" if it determines that there are genuine issues of material fact in dispute. Morales v. Quintel Entertainment Inc., 249 F.3d 115, 121 (2d Cir. 2001).

### IV. FEDERAL DEBT COLLECTION PRACTICES ACT

Congress' purpose when enacting the FDCPA was "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain

from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e. One section 1692e violation, at issue here, is the false representation of "the character, amount, or legal status of any debt." § 1692e(2)(A).

This Circuit interprets the FDCPA as a strict liability statute. See Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996). Thus, a consumer does not have to show that the debt collector intentionally violated the FDCPA. See id. A debt collector who violates the FDCPA is liable to the victim for damages. 15 U.S.C. § 1692k. Even if the victim does not suffer any actual damages as a result of the violation, the debt collector is still liable for "such additional damages as the court may allow, but not exceeding $1,000." Id. at § 1692k(a)(2). In determining the amount of statutory damages under section 1692k(a), "the court shall consider, among other relevant factors . . . the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." Id. at § 1692k(b)(1). Furthermore, if the plaintiff's action is successful, then he is entitled to a reasonable attorney's fee, as well as other costs of the action. Id. at § 1692k(a)(3).

The FDCPA does contain two exceptions to provisions imposing liability on debt collectors. See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 130 S. Ct. 1605, 1609 (2010). The bona fide error defense, at issue here, is a general defense to

any violation of the FDCPA.[3]  The defense is found at 15 U.S.C. § 1692k(c), and states:

> A debt collector may not be held liable in any action brought under this title [15 USCS §§ 1692 et seq.] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).  Thus, in order to successfully invoke the bona fide error defense, the defendant must show, by a preponderance of the evidence, that: (1) the FDCPA violation was not intentional; (2) the FDCPA violation resulted from a bona fide error; and (3) the defendant maintained reasonable procedures to avoid the specific error committed.  See Pipiles v. Credit Bureau of Lockport, 886 F.2d 22, 25 (2d Cir. 1989).

When attempting to show that he is entitled to the bona fide error defense, a debt collector "need not demonstrate that its procedures for avoiding [FDCPA] violations are 'fool proof,' but rather, must only show that its procedures constitute a 'reasonable precaution.'"  Katz v. Asset Acceptance, LLC, 2006 U.S. Dist. LEXIS 86634 at *6-7 (E.D.N.Y. Nov. 29, 2006) (citing Kort v. Diversified Collection Serv. Inc., 394 F.3d 530, 539 (7th Cir. 2005)); see also Hyman v. Tate, 362 F.3d 965, 968 (7th Cir. 2004) (affirming the district court's finding that the debt collector's procedures were reasonable, despite the fact that they left open some room for error).

## V.  DISCUSSION

The first two elements of the bona fide error defense, whether the FDCPA

---

[3]The other exception is found at 15 U.S.C. § 1692k(e), which states that "[n]o provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the [Federal Trade] Commission."  § 1692k(e).

violation was unintentional and whether it resulted from a bona fide error, are not in dispute.[4] See Pl.'s Mot. at 8-9. Thus, on summary judgment, this case comes down to whether a reasonable jury could find that Tolisano & Danforth maintained reasonable procedures to avoid making numerical mistakes when filling out execution forms. With respect to Dimovski's Motion for Summary Judgment, the court concludes that, looking at the record before it, and drawing all reasonable inferences in favor of Tolisano & Danforth, a reasonable jury could find that the procedures maintained by Tolisano & Danforth were reasonable. Furthermore, the court finds that, drawing all reasonable inferences in favor of Dimovski, as it must do when ruling on Tolisano & Danforth's Motion, that a reasonable jury could find that the procedures maintained were inadequate, and that Tolisano & Danforth is not entitled to the bona fide error defense. Thus, the court denies the parties' respective Motions.

Both parties, in their respective Motions for Summary Judgment, assert that there are no genuine issues of material fact in dispute with respect to each of their claims. Dimovsky argues that, because Tolisano & Danforth had no written guidelines or checklists regarding procedures to provide the correct information when filling out execution forms, Tolisano & Danforth did not maintain reasonable procedures to avoid the specific error committed. In addition, Dimovski claims that Tolisano & Danforth is

---

[4] The "intent" element of the bona fide error defense is different from the intent required to violate the FDCPA. Because the FDCPA is a strict liability statute, even unintentional violations render a debt collector liable. However, for purposes of the bona fide error defense, when determining whether a debt collector "intentionally" violated the FDCPA, courts look to whether the actual violation was intentional. See Clark v. Capital Credit & Collection Servs., 460 F.3d 1162, 1176 (9th Cir. 2006) ("[I]ntent is only relevant to the determination of damages [under § 1692k(c)]."). Here, in terms of the bona fide error defense, Dimovski is not claiming that Tolisano & Danforth intentionally filled out the form to include a $35 overage.

not shielded from liability simply because it relied on the instructions of the small claims court when filling out the second execution form, because it was Tolisano & Danforth's original error that caused the small claims court to give the instructions to change the execution form.  Finally, Dimovski asserts that, upon receiving the small claims court's instructions, Tolisano & Danforth should have double checked the numbers on the original execution form to determine why the small claims court thought there was an error.  Thus, Dimovski claims that no reasonable jury could find that Tolisano & Danforth is entitled to the bona fide error defense.

On the other hand, Tolisano & Danforth claims that no reasonable jury could find that the procedures it maintained were unreasonable and inadequate.  Tolisano & Danforth leans heavily on the fact that, because the secretary relied on the instructions from the small claims court when filling out the second execution form which resulted in the $35 overage, it should be shielded from liability.  In other words, Tolisano & Danforth claims that, because it intentionally relied on the instructions of the small claims court to add an extra $35 into Box 3, it need only show that it unintentionally violated the FDCPA in order to avail itself of the bona fide error defense.  Alternatively, even if reliance on the small claims court's instructions is not enough, Tolisano & Danforth claims that it maintains reasonable procedures to ensure that execution forms are completed accurately.

The court finds that whether the bona fide error defense applies in this case is a question of fact for the jury.  Determining whether the procedures maintained by Tolisano & Danforth were reasonably adapted to prevent the error at hand is "a fact-intensive inquiry."  Reichert v. Nat'l Credit Sys., 531 F.3d 1002, 1006 (9th Cir. 2008);

see also Silver v. Howard Lee Schiff, 2010 U.S. Dist. LEXIS 76072 (denying cross motions for summary judgment when the record was inadequate to determine, as a matter of law, whether the procedures maintained by the debt collector were reasonably adapted to prevent the error at issue). At this point, the record does not contain enough information for the court to grant summary judgment in favor of either party. In his deposition, Danforth testified that the firm organizes its files so that all of the pleadings are on one side, and all of the correspondence and payments are on the other. Danforth Dep. 36-37. The secretary is then able to fill out the execution form while referencing the sheet containing the relevant information to ensure that no mistake is made.[5] Id. at 37:14-16. However, Tolisano & Danforth do not have any written guidelines, and there is no evidence that the secretaries are trained on how to properly

---

[5]Dimovski, in paragraph 3 of his Local Rule 56(a)(2) Statement, states that he cannot admit or deny that Tolisano & Danforth organizes its files in this way, because Tolisano & Danforth refused to produce its files during discovery due to confidentiality and privilege issues. However, Dimovski never filed a motion to compel, in compliance with Fed. R. Civ .P. 37. Thus, without following the appropriate guidelines for compelling disclosure of documents, Dimovski cannot refuse to admit or deny Tolisano & Danforth's assertion of fact. As such, the court deems that paragraph 3 of Tolisano & Danforth's Local Rule 56(a)(1) Statement is admitted.
    Furthermore, Dimovski claims that, even though Danforth testified that the files were organized in this way, his testimony is not the "best evidence." Dimovski apparently is referring to the "best evidence rule" in sections 1001 et seq. of the Federal Rules of Evidence. The purpose of the "best evidence rule" is to ensure that, when proving the contents of a writing, recording, or photograph, the party offers the original form of that document. Fed. R. Evid. 1002. Danforth's testimony concerning his personal knowledge of how his firm organizes its files is not a writing, recording, or photograph. Therefore, the "best evidence rule" has no application here.
    Dimovski also denies paragraphs 10 and 13 of Tolisano & Danforth's Local Rule 56(a)(1) Statement because he claims that the evidence supporting those assertions is hearsay. However, Danforth testified as to his personal knowledge of the secretary's actions when filling out the execution forms. Furthermore, the secretary's actions were not an assertion of any kind. Dimovski's testimony can be reasonably read to be that he directly observed the actions of the secretary. Therefore, Danforth's statements are not hearsay, and paragraph 13 of Tolisano & Danforth's Local Rule 56(a)(1) Statement is deemed admitted. Paragraph 10 is not deemed admitted because, despite his incorrect application of the hearsay doctrine, Dimovski is correct that Danforth's testimony only relates to the procedures used to fill out Box 4 of the execution form, rather than the entire execution form.

fill out execution forms.[6]  Based on this limited evidence, and drawing all reasonable inferences in favor of the appropriate party when ruling on both parties' Motions, the court cannot determine as a matter of law whether or not the procedures maintained by Tolisano & Danforth were reasonably maintained to prevent clerical errors on execution forms.

Furthermore, In order to determine whether the procedures Tolisano & Danforth maintained were reasonably adapted to prevent errors on execution forms, it is extremely important to know whether Tolisano & Danforth has made this type of error before, notwithstanding the procedures currently in place.  See Silver, 2010 U.S. Dist. LEXIS 76072 at *16 ("In order to come to a conclusion [on whether the defendant maintained reasonable procedures], it will be important to know information regarding Defendant's past record of avoiding error using its current system . . . .").  The record is silent as to whether this type of error is unique, or whether it is recurring.  The court finds that evidence of Tolisano & Danforth's history, or lack thereof, of making errors on execution forms is important because "a debt collector need not demonstrate that its

---

[6]Tolisano & Danforth attached an amended Local Rule 56(a)(1) Statement, as well as a Supplemental Affidavit, as exhibits to its Response to Dimovski's Reply Motion.  In both documents Tolisano & Danforth adds four paragraphs, wherein it states that it trains all of its secretaries on how to accurately fill out execution forms, and on how to ensure that the execution forms end up in an attorney's hands for final review.  However, when asked in his deposition, taken before the filing of both of the documents, about the procedures employed by the firm, Danforth makes no mention of training secretaries.  This information is material to the determination of whether summary judgment is appropriate.
    The court finds that Tolisano & Danforth's amended Local Rule 56(a)(1) Statement and Supplemental Affidavit contradict Danforth's prior testimony during his deposition.  It is well settled in this Circuit that "a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."  Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987).  As such, for the purposes of Tolisano & Danforth's Motion for Summary Judgment, the court will not accept those statements of fact as true.  This, of course, does not prevent the introduction of this evidence at trial, subject to impeachment.

procedures for avoiding violations are 'fool proof,' but rather, must only show that its procedures constitute a 'reasonable precaution.'" Katz, 2006 U.S. Dist. LEXIS 86634 at *6-7.  If Tolisano & Danforth has made this type of error in the past, then it is likely that it did not maintain reasonable procedures to ensure that execution forms were filled out accurately, and vice versa.  Thus, looking at the record before it, the court determines that "a jury is entitled to decide whether reasonable procedures existed" at Tolisano & Danforth to prevent errors on execution forms.  McDaniel v. South & Assoc., P.C., 325 F. Supp. 2d 1210, 1219 (D. Kan. 2004).

Both parties cite case law in support of their respective Motions, but both parties' reliance is misplaced.  Dimovski points to Knighten v. Palisades Collections, LLC, 721 F. Supp. 2d 1261 (S.D. Fla. 2010) to support his claim that summary judgment is appropriate.  In Knighten, the district court granted the plaintiff's motion for summary judgment and held that the defendant debt collector could not raise the bona fide error defense.  Knighten, 721 F. Supp. 2d at 1271.  In reaching its conclusion, the court found that the defendant did not produce any evidence explaining the procedures used to avoid the specific error at issue.  Id.  The case at hand differs, however, because Tolisano & Danforth has come forth with sufficient evidence explaining the procedures it employs to prevent errors on execution forms.

In addition, Dimovski claims that the mere fact that the violation occurred is evidence of the absence of reasonable procedures designed to prevent the error.  See Pl.'s Rep. Mot. at 4.  However, Dimovski's statement proves too much.  If it were correct, there would be no place for the bona fide error defense, which assumes that an "error" has occurred.  The fact that an error occurred is not dispositive of the issue of

whether a debt collector's procedures were reasonable, because a debt collector need not show that its procedures are "fool proof" to be entitled to the bona fide error defense. See Katz, 2006 U.S. Dist. LEXIS 86634 at *6. Furthermore, the bona fide error defense was designed "to protect debt collectors from inadvertent clerical errors," which is exactly the type of error that occurred here. Munoz v. Pipestone Financial, LLC, 397 F. Supp. 2d 1129, 1132 (D. Minn. 2005). Thus, drawing all reasonable inferences in favor of Tolisano & Danforth, the court finds that Dimovski is not entitled to summary judgment.

Similarly, the case law cited by Tolisano & Danforth is not supportive of granting summary judgment in its favor. Tolisano & Danforth principally relies on Katz and Kort in support of its Motion. In Katz, the defendant debt collector filed suit against the plaintiff in the incorrect venue, because the defendant's secretary inadvertently typed in the wrong venue code in the plaintiff's file. Katz, 2006 U.S. Dist. LEXIS 86634 at *7. The plaintiff filed suit under the FDCPA, and the defendant claimed it was entitled to the bona fide error defense. Id. at *1. The district court granted the defendant's motion for summary judgment because it found that the defendant had "offered detailed evidence of firm policies and procedures that it has in place to avoid having collection suits filed in venues other than the venue where the debtor resides." Id. at *9. Here, however, Tolisano & Danforth, while providing sufficient evidence regarding the procedures it maintains to prevent errors on execution forms to survive summary judgment, has not provided extensive and detailed evidence on that issue such that no material issue of fact remains. Thus, Tolisano & Danforth's evidence in support of its Motion is not as decisive as the evidence in Katz.

In addition, Tolisano & Danforth claims that, under Kort, a debt collector is shielded from FDCPA liability under the bona fide error defense if it relies on the instructions of a governing authority when engaging in a course of action that leads to a violation of the FDCPA. Thus, Tolisano & Danforth claims it should be shielded from liability because it relied on the instructions of the small claims court when filling out the second execution form that led to the $35 overage. However, Tolisano & Danforth reads the holding in Kort far too broadly.

In Kort, the Court of Appeals for the Seventh Circuit affirmed the district court's decision that the defendant was entitled to the bona fide error defense. Kort, 294 F.3d 530. The defendant debt collector in Kort was governed by the Department of Education ("DOE") and was obligated to abide by the DOE's policies and procedures. Id. at 534. In order to comply with DOE procedures, the defendant mailed out a form, written entirely by the DOE, when attempting to collect debts. Id. at 533-34. The contents of the form were found to violate certain provisions of the FDCPA. Id. at 535. The Court of Appeals held, however, that the defendant was shielded from liability because it relied on the DOE's instructions when mailing out the form at issue. Id. at 538. Specifically, the Court of Appeals stated "[a]n entirely reasonable procedure to avoid misinterpreting and misapplying a federal statute . . . is to adopt the legal interpretation of the federal agency charged with regulating under the statute in question." Id.

Importantly, and to the detriment of Tolisano & Danforth, the defendant in Kort did not make a previous error that led to the DOE's instructions. Here, however, it was Tolisano & Danforth's initial error (not properly filling out Box 1 on the original execution

14

form) that led to the instructions handed down by the small claims court. If Tolisano & Danforth had not committed the error in the first place, there would have been no need to rely on the instructions, because the original form would have been filled out properly and the instructions would never have been given.

In addition, it is a question of fact whether it was reasonable for Tolisano & Danforth to simply rely on the instructions without taking the time to double check the original execution form in order to determine why the original error occurred. Thus, such blind reliance on instructions issued by a court, or other governing body, does not satisfy the reasonableness prong of the bona fide error defense if the defendant's initial mistake is what causes the court to hand down remedial instructions. Absent reasonable procedures maintained to avoid the error at issue, a defendant who makes a bona fide mistake cannot be immune from suit simply because, somewhere along the line, it relied on instructions handed down by a governing body. See Miller v. Wolpoff & Abramson, LLP, 471 F. Supp. 2d 243, 251 (E.D.N.Y. 2007) ("[A]n attorney may rely to some extent on another party . . . but [the attorney] may not simply substitute the judgment of that other party for his or her own. The attorney's reliance on the other party must be reasonable on the basis of other facts . . . .").

In sum, reasonable jurors could disagree as to whether Tolisano & Danforth is entitled to the bona fide error defense. As such, both parties' Motions for Summary Judgment are denied.

## VI.    CONCLUSION

Accordingly, for the foregoing reasons, the court **DENIES** both parties' Motions

for Summary Judgment. The court determines that the record is insufficient to grant judgment as a matter of law for either party. Thus, a jury must decide the question of whether Tolisano & Danforth maintained procedures reasonably adapted to prevent errors on execution forms. If a jury so finds, Tolisano & Danforth is entitled to the bona fide error defense.

**SO ORDERED**

    Dated at Bridgeport, Connecticut this 28th day of April, 2011.

                          /s/ Janet C. Hall
                          Janet C. Hall
                          United States District Judge